**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | |
|---|---|
| **PEER GLOBAL INC.,** | |
| **Plaintiff,** | **NO. 7:26-CV-33** |
| **v.** | |
| **APPLE INC.,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Peer Global Inc. ("Peer") files this complaint against Defendant Apple Inc. ("Apple") to stop Defendant's infringement of U.S. Patent Nos. 11,137,878; 11,650,712; and 11,966,559 ("the '878 Patent", "the '712 Patent", and "the '559 Patent", respectively; collectively, "the Patents-in-Suit") and recover all appropriate legal and equitable relief.  Peer alleges as follows:

1.     Peer is a corporation organized under the laws of the State of Delaware and has a principal place of business in Bothell, Washington.

2.     On information and belief, Apple, Inc. is a corporation organized under the laws of California and has principal places of business in this district at 12545 Riata Vista Circle, Austin, Texas 78727 and 6900 W. Parmer Lane, Austin, Texas 78729.

**JURISDICTION AND VENUE**

3.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 100 *et seq.*

1

4.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.    This Court has personal jurisdiction over Apple under the Texas Long Arm Statute and under the Due Process Clause of the Fifth Amendment.  Apple has purposefully and intentionally availed itself of the privileges of doing business in Texas and in this District by conducting business within Texas and this District, and by placing goods — including goods accused of infringing the Patents-in-Suit — into the stream of commerce with the expectation that people within the State of Texas and in this District would purchase those goods.  Apple maintains multiple regular and established places of business in the State of Texas and in this District, as described below.  Apple's tortious acts giving rise to this lawsuit, which have harmed Peer, have occurred and are continuing to occur within Texas and within this District.  Apple further acted with knowledge, at least from the filing and/or service of this complaint, that its actions infringing one or more claims of each of the Patents-in-Suit, including through making, using, selling, offering to sell, and importing the infringing products, would cause harm to Peer in Texas and in this District. On information and belief, Apple is transacting business and benefitting financially from the Texas market, including for example, through at least the making, using, offering to sell, and selling of infringing products in, and the importation of infringing products into, the State of Texas and this District.  Finally, Apple has participated in numerous lawsuits in Texas and in this Court, such that personal jurisdiction over Apple has been well established.  Accordingly, the exercise of jurisdiction over Apple will not offend traditional notions of fair play and substantial justice.

6.    Venue is proper pursuant to 28 U.S.C. § 1400 because, on information and belief, Apple maintains many regular and established places of business in this District and has committed acts of infringement in this District.

7.    On information and belief, Apple maintains at least the following regular and established places of business within this District:  (1) two Apple campuses located in Austin at 12545 Riata Vista Circle, Austin, Texas 78727 and 6900 W Parmer Lane, Austin, Texas 78729; (2) the Apple design center located near Austin at 320 S. Capital of Texas Hwy, West Lake Hills, Texas 78746; and (3) at least 5 Apple Stores located in this District at 3121 Palm Way, Austin, Texas 78758; 2901 S. Capital of Texas Highway, Austin, Texas 78746; 15900 La Cantera Parkway, San Antonio, Texas 78256; 7400 San Pedro Avenue, San Antonio, Texas 78216; and 8401 Gateway Boulevard West, El Paso, Texas 79925.

8.    On information and belief, Apple employs thousands of workers at its Austin campuses within this District.  According to Apple's website, it employs over 8,400 workers within the State of Texas, with about 6,000 of those employees being in Austin.  *See* www.apple.com/job-creation (last visited January 3, 2026).  Apple claims that Austin represents Apple's second largest corporate presence in the world.  *Id.*

9.    The Western District of Texas has been established as an appropriate venue for patent infringement cases against Apple in other cases. For example, in *Carbyne Biometrics, LLC v. Apple Inc.*, No. 1:23-cv-00324-ADA, (W.D. Tex. Feb. 12, 2024), ECF No. 84, Hon. Alan D. Albright denied Apple's motion to transfer the case to the Northern District of California. The Federal Circuit upheld this decision, denying Apple's petition for a writ of mandamus seeking to reverse the district court's ruling. *In re Apple Inc.*, No. 2024-111, 2024 WL 1153977 (Fed.

Cir. Mar. 18, 2024).  Accordingly, the Western District of Texas is a proper venue for the current action.

**<u>FACTUAL BACKGROUND</u>**

10.    Peer was founded in 2021 by Tony (Thinh) K. Tran to develop a living map where the digital and physical worlds combine into a seamless experience for the Peer user.  Peer currently provides an immersive experience for its users in the form of a continuous, shared digital environment mapped to real life.  Peer designed its technology as an operating environment where users can interact with artificial intelligence models together inside a persistent world, with shared context that carries across time, place, and activity.  Peer's technology allows users to virtually travel through a real-time experience to see real-time activities, trending hubs, and social hotspots around the world.

11.    Navigation is fundamental to making the user-experience feel natural and continuous.  Accordingly, users must be able to move through large amounts of content and make rapid selections without breaking immersion, without having their view of the environment blocked, and without requiring the user to constantly aim at small buttons or transition into separate screens.

12.    Peer developed the selection ring as a foundational interface primitive designed for speed, fluidity, and continuous interaction within an immersive environment. Unlike traditional cursor-based systems, which rely on small, device-specific pointers and discrete clicks, the selection ring functions as a natural, spatial pointer that aligns with how users intuitively interact with the screen. This design enables faster action, reduces visual clutter, and supports clearer organization of on-screen elements, so that users move through the interface with continuous, uninterrupted flow. Built for a persistent, cross-device world, the selection ring supports modern,

fluid user interfaces that feel responsive and alive, enabling continuous virtual presence and world-scale experiences rather than isolated applications and discrete screens.

13.    The method of operating a user interface provided by Peer's technology governs how users make selections and navigate within the immersive environment.    Instead of presenting information through traditional pages, menus, or flat lists, the Peer technology presents the user to a shared digital scape—anchored to real-world geography—where the user navigates and interacts with places, people, and experiences as spatial objects within a continuous world.

14.    The following screenshot illustrates how the selection ring primitive within the Peer technology contributes to the immersive experience:



The functionality provided by the selection ring allows for an immersive experience by the user by minimizing the navigation elements within the display as shown in the screenshot.

15. Peer's selection ring technology enables users to interact with an on-screen selection interface that operates as an overlay, allowing users to select actions and items based on the position of the movable selection ring relative to available options displayed on the interface. This design allows users to make fast, intuitive selections using a continuous motion, without clicking through nested menus, without requiring precision pointing, and without disrupting the immersive experience. The selection-ring thus enables rapid selection without pulling the user out of the living experience.

16. For Peer, the selection ring primitive is foundational, enabling a user to move through the environment, to interact with elements on the screen, and to access system-level functionality in a way that preserves immersion and reduces friction. It further enables Peer's technology to function as a unified environment where the digital and physical world can coexist in one continuous user experience.

17. The Patents-in-Suit recite claims directed to interactive user-interface primitives in which a user selects and/or activates a movable Selection Ring that appears as an overlay on the screen and selects an item based on the Selection Ring's position relative to items displayed on the screen. The claimed inventions are directed to the way the user interface functions and constitute an improvement over traditional point-and-click pointers and selectors used in prior systems. The Selection Ring enables users to provide input through relative positioning on the interface, reducing reliance on conventional cursor-based or tap-precise selection methods.

18. Peer took steps to protect its invention, including by filing provisional United States Patent Application No. 62/334,318 on May 10, 2016.

19.    On October 5, 2021, the United States Patent Office duly issued the '878 Patent, which claims priority to U.S. Provisional Patent Application No. 62/334,318.  A true and correct copy of the '878 Patent is attached as **Exhibit A** to this Complaint.

20.    On May 16, 2023, the United States Patent Office duly issued the '712 Patent, which claims priority to U.S. Provisional Patent Application No. 62/334,318.  A true and correct copy of the '712 Patent is attached as **Exhibit B** to this Complaint.

21.    On April 23, 2024, the United States Patent Office duly issued the '559 Patent, which claims priority to U.S. Provisional Patent Application No. 62/334,318.  A true and correct copy of the '559 Patent is attached as **Exhibit C** to this Complaint.

22.    Peer owns all rights, title, and interest in each of the Patents-in-Suit, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers.

23.    On, or about, September 15, 2025, Apple publicly released iOS 26, which includes the Liquid Glass features that infringe one or more claims in each of the Patents-in-Suit, as described below.

24.    On information and belief, Apple continues to infringe one or more claims of the Patents-in-Suit within the United States, and plans to continue to do so in the future.

<div align="center">

**COUNT I:**
**PATENT INFRINGEMENT UNDER 35 U.S.C. § 271 OF THE '878 PATENT**

</div>

25.    Peer incorporates by reference the allegations in the preceding paragraphs.

26.    Apple makes, uses, sells, offers to sell, and/or imports into the United States various devices that use iOS26 and iPadOS26, including, for example, iPhones and iPads ("the Accused Devices") without the authorization or consent of Peer.

<div align="center">

7

</div>

27.   Apple directly infringes one or more claims of the '878 Patent by making, using, selling, offering to sell, and/or importing into the United States the Accused Devices.

28.   On information and belief, Apple will continue in the future to make, use, sell, offers to sell, and/or import Accused Devices in this district, such that infringement of the '878 Patent will continue to occur in this district.

29.   As shown in the following paragraphs, the Accused Products sold by Apple infringe at least claim 1 of the '878 Patent literally and/or under the doctrine of equivalents.  These descriptions are illustrative only, and made without the benefit of discovery or claim construction.  Peer reserves the right to modify its infringement allegations to include additional products and/or claims as appropriate.

30.   As shown in the following screenshots, the Accused Devices present, by a processor of a computing device, a first graphical user interface (claim element 1[a]):




iPhone                                          iPad

31.    As shown in the following screenshots, the Accused Devices enable, by the processor, a user to control presentation of information within the first graphical user interface (claim element 1[b]):





iPhone                                           iPad

32.    As shown in the following screenshots, the Accused Devices present, by the processor, a selection ring to the user in the first graphical user interface without altering the presentation of information within the first graphical user interface (claim element 1[c]):




iPhone                                           iPad

33.   As shown in the following screenshots, the Accused Devices receive, by the processor, a selection of the selection ring by the user to enable the user to manipulate a position of the selection ring within the first graphical user interface (claim element 1[d]):




iPhone                                           iPad

34. As shown in the following screenshots, the Accused Devices present, by the processor, a plurality of icons to the user in the first graphical user interface in response to the selection of the selection ring (claim element 1[e]):




iPhone                                    iPad

35. As shown in the following screenshots, the Accused Devices receive, by the processor, a user manipulation of positioning of the selection ring within the first graphical user interface without altering the information being presented within the first graphical user interface and without altering a location of the plurality of icons in the first graphical user interface (claim element 1[f]):

 

iPhone                                                    iPad

36.   As shown in the following screenshots, the Accused Devices receive, by the processor, a selection of an icon from the plurality of icons based on a position of the selection ring in the first graphical user interface relative to the icon in response to the user manipulation of the positioning of the selection ring (claim element 1[g]):

 

iPhone                                                    iPad

37. As shown in the following screenshots, the Accused Devices present, by the processor, a second graphical user interface to the user based on the selected icon (claim element 1[h]):





iPhone                                                                   iPad

38. On information and belief, and as a nonlimiting example, Apple employees at the various Apple stores in this District use the method recited in claim 1 when demonstrating the Accused Devices to customers. Such demonstrations occur as part of the employees' regular and expected job responsibilities. Accordingly, Apple has directly infringed, and continues to directly infringe, at least claim 1 of the '878 Patent.

39. Apple's infringements have been willful, intentional, and deliberate. Apple knew or should have known at least by the date that it received notice of this lawsuit that the Accused Devices would directly infringe one or more claims of the '878 Patent, and that its actions result in direct and indirect infringement of the claims of the '878 Patent. Apple, however, has infringed and, on information and belief, continues to infringe claims of the '878 Patent.

40.    Apple has induced and continues to actively induce under 35 U.S.C.§ 271(b).  Its end-users and app developers to directly infringe one or more claims of the '878 Patent.  The users and app developers of the Accused Devices directly infringe at least claim 1 of the '878 Patent when they use the Accused Devices in the ordinary, customary, and intended way.  Apple intentionally directs and encourages these users and app developers to use the Accused Devices within the United States in an infringing manner.  Apple induces this infringement through affirmative acts.  These affirmative acts include, for example, making available advertisements, manuals, videos, and other marketing materials that promote and encourage the use of the Liquid Glass features that directly infringe one or more claims of the '878 Patent.  For example, Apple makes available through its website the video "Meet Liquid Glass" that encourages developers to incorporate Liquid Glass features into their apps.  *See* www.developer.apple.com/wwdc25 (last visited January 6, 2026).  In addition, Apple provides a Technology Overview for Liquid Glass        for        iOS        app        developers.        *See* www.developer.apple.com/documentation/technologyoverviews/adopting-liquid-glass        (last visited January 6, 2026).  This web page specifically includes a section labeled "Controls" that provides information to developers on how and when to include Liquid Glass sliders.  Apple also provides advertising to end users regarding iOS 26, under the heading "New look. Even more magic."  *See* www.apple.com/os/ios (last visited January 6, 2026).  This webpage includes listings for Liquid Glass, including the features that allegedly infringe one or more claims of the '878 Patent.  Apple also highlights Liquid Glass on its webpage devoted to iPadOS.  *See* www.apple.com/os/ipados (last visited January 7, 2026).  On information and belief, Apple knew or should have known its actions induced others to commit acts that infringe at least claim 1 of the '878 Patent.  On information and belief, Apple will continue to induce its end users and app

developers to use the Accused Devices in a manner that infringes the claims of the '878 Patent with knowledge that the Liquid Glass features are especially designed or adapted to operate in a manner that infringes.

41.    Apple also contributorily infringes under 35 U.S.C. § 271(c) one or more claims of the '878 Patent.  Apple knew or should have known at least by the filing of the Complaint that the combination for which its components were especially made was both patented and infringing.  Apple knew or should have known at least by the filing of the Complaint that the accused capabilities of Liquid Glass features implemented on the Accused Devices would infringe one or more claims of the '878 Patent.  On information and belief, the accused capabilities of Liquid Glass features have no substantial non-infringing uses, and the specific and intended use of the accused functions of Liquid Glass features are a material part of the inventions of the '878 Patent.  These inventions do not constitute a staple article of commerce suitable for substantial non-infringing use.

42.    Peer has suffered damages as a result of Apple's direct and indirect infringement of the claims of the '878 Patent in an amount to be proven at trial.

43.    Peer has suffered, and will continue to suffer, irreparable harm as a result of Apple's infringement of the claims of the '878 Patent, for which there is no adequate remedy at law, unless Apple's infringement is enjoined by this Court.

<u>**COUNT II:**</u>
<u>**PATENT INFRINGEMENT UNDER 35 U.S.C. § 271 OF THE '712 PATENT**</u>

44.    Peer incorporates by reference the allegations in the preceding paragraphs.

45.    Apple makes, uses, sells, offers to sell, and/or imports into the United States the Accused Devices without the authorization or consent of Peer.

15

46.  Apple directly infringes one or more claims of the '712 Patent by making, using, selling, offering to sell, and/or importing into the United States the Accused Devices.

47.  On information and belief, Apple will continue in the future to make, use, sell, offers to sell, and/or import Accused Devices in this district, such that infringement of the '712 Patent will continue to occur in this district.

48.  As shown in the following paragraphs, the Accused Products sold by Apple infringe at least claim 1 of the '712 Patent literally and/or under the doctrine of equivalents.  These descriptions are illustrative only and made without the benefit of discovery or claim construction. Peer therefore reserves the right to modify its infringement allegations as appropriate as the case progresses.

49.  As shown in the following screenshots, the Accused Devices present, by a processor of a computing device, a selection ring in a first graphical user interface (claim element 1[a]):

 

iPhone                          iPad

50.    As shown in the following screenshots, the Accused Devices, in response to receiving a first selection of the selection ring, present by the processor, a plurality of icons in the first graphical user interface (claim element 1[b]):




|  iPhone  |  iPad  |
|---|---|

51.    As shown in the following screenshots, the Accused Devices receive, by the processor, user manipulation of a position of the selection ring within the first graphical user interface without altering a location of the plurality of icons being presented within the first graphical user interface (claim element 1[c]):

17

 

iPhone                              iPad

52.     As shown in the following screenshots, the Accused Devices, in response to receiving a second selection associated with the selection ring, select an icon from the plurality of icons based on the position of the selection ring within the first graphical user interface (claim element 1[d]):

 

iPhone                              iPod

53. As shown in the following screenshots, the Accused Devices present, by the processor, a second graphical user interface to the user based on the selected icon (claim element 1[e]):





iPhone                                                    iPad

54. On information and belief, and as a nonlimiting example, Apple employees at the various Apple stores in this District use the method recited in claim 1 when demonstrating the Accused Devices to customers. Such demonstrations occur as part of the employees' regular and expected job responsibilities. Accordingly, Apple has directly infringed, and continues to directly infringe, at least claim 1 of the '712 Patent.

55. Apple's infringements have been willful, intentional, and deliberate. Apple knew or should have known at least by the date that it received notice of this lawsuit that the Accused Devices would directly infringe one or more claims of the '712 Patent, and that its actions result in direct and indirect infringement of the claims of the '712 Patent. Apple, however, has infringed and, on information and belief, continues to infringe claims of the '712 Patent.

56.     Apple has induced and continues to actively induce under 35 U.S.C. § 271(b).  Its end-users and app developers to directly infringe one or more claims of the '712 Patent through affirmative acts.  The users and app developers of the Accused Devices directly infringe at least claim 1 of the '712 Patent when they use the Accused Devices in the ordinary, customary, and intended way.  Apple intentionally directs and encourages these users and app developers to use the Accused Devices within the United States in an infringing manner.  Apple induces this infringement through affirmative acts.  These affirmative acts include, for example, making available advertisements, manuals, videos, and other marketing materials that promote and encourage the use of the Liquid Glass features that directly infringe one or more claims of the '712 Patent.  For example, Apple makes available through its website the video "Meet Liquid Glass" that encourages developers to incorporate Liquid Glass features into their apps.  *See* www.developer.apple.com/wwdc25 (last visited January 6, 2026).  In addition, Apple provides a   Technology   Overview   for   Liquid   Glass   for   iOS   app   developers.   *See* www.developer.apple.com/documentation/technologyoverviews/adopting-liquid-glass       (last visited January 6, 2026).  This web page specifically includes a section labeled "Controls" that provides information to developers on how and when to include Liquid Glass sliders.  Apple also provides advertising to end users regarding iOS 26, under the heading "New look. Even more magic."  *See* www.apple.com/os/ios (last visited January 6, 2026).  This webpage includes listings for Liquid Glass, including the features that allegedly infringe one or more claims of the '712 Patent.  Apple also highlights Liquid Glass on its webpage devoted to iPadOS.  *See* www.apple.com/os/ipados (last visited January 7, 2026).  On information and belief, Apply knew or should have known its actions induced others to commit acts that infringe at least claim 1 of the '712 Patent.  On information and belief, Apple will continue to induce its end users and

app developers to use the Accused Devices in a manner that infringes the claims of the '712 Patent with knowledge that the Liquid Glass features are especially designed or adapted to operate in a manner that infringes.

57. Apple also contributorily infringes under 35 U.S.C. § 271(c) one or more claims of the '712 Patent. Apple knew or should have known at least by the filing of the Complaint that the combination for which its components were especially made was both patented and infringing. Apple knew or should have known at least by the filing of the Complaint that the accused capabilities of Liquid Glass features implemented on the Accused Devices would infringe one or more claims of the '712 Patent. On information and belief, the accused capabilities of Liquid Glass features have no substantial non-infringing uses, and the specific and intended use of the accused functions of Liquid Glass features are a material part of the inventions of the '712 Patent. These inventions do not constitute a staple article of commerce suitable for substantial non-infringing use.

58. Peer has suffered damages as a result of Apple's direct and indirect infringement of the '712 Patent in an amount to be proven at trial.

59. Peer has suffered, and will continue to suffer, irreparable harm as a result of Apple's infringement of the claims of the '712 Patent, for which there is no adequate remedy at law, unless Apple's infringement is enjoined by this Court.

<div align="center">

**COUNT III:**
**PATENT INFRINGEMENT UNDER 35 U.S.C. § 271 OF THE '559 PATENT**

</div>

60. Peer incorporates by reference the allegations in the preceding paragraphs.

61. Apple makes, uses, sells, offers to sell, and/or imports into the United States the Accused Devices without the authorization or consent of Peer.

<div align="center">21</div>

62. Apple directly infringes one or more claims of the '559 Patent by making, using, selling, offering to sell, and/or importing into the United States the Accused Devices.

63. On information and belief, Apple will continue in the future to make, use, sell, offers to sell, and/or import Accused Devices in this district, such that infringement of the '559 Patent will continue to occur in this district.

64. As shown in the following paragraphs, the Accused Products sold by Apple infringe at least claim 1 of the '559 Patent literally and/or under the doctrine of equivalents. These descriptions are illustrative only and made without the benefit of discovery or claim construction. Peer therefore reserves the right to modify its infringement allegations as appropriate as the case progresses.

65. As shown in the following screenshots, the Accused Devices, in response to an activation of a selection ring by a user, perform the actions described in the following two paragraphs.

66. As shown in the following screenshots, the Accused Devices present, in first graphical user interface, a plurality of icons that each have an icon position within the first graphical user interface (claim element 1[a][i]):

 

iPhone                                    iPad

67.    As shown in the following screenshots, the Accused Devices activate user manipulation of a position of the selection ring in the first graphical user interface (claim element 1[a][ii]):

 

iPhone                                    iPad

23

68.    As shown in the following screenshots, the Accused Devices receive the user manipulation of the position of the selection ring within the first graphical user interface relative to the plurality of icons (claim element 1[b]):





iPhone                                                    iPad

69.    As shown in the following screenshots, the Accused Devices select an icon from the plurality of icons based on the position of the selection ring in the first graphical user interface relative to the icon position of the icon (claim element 1[c]):



iPhone                                                              iPad

70.    As shown in the following screenshots, the Accused Devices transition the first graphical user interface into a second graphical user interface based on the selected icon (claim element 1[d]):



iPhone                                                              iPad

71.    On information and belief, and as a nonlimiting example, Apple employees at the various Apple stores in this District use the method recited in claim 1 when demonstrating the Accused Devices to customers.  Such demonstrations occur as part of the employees' regular and expected job responsibilities.  Accordingly, Apple has directly infringed, and continues to directly infringe, at least claim 1 of the '559 Patent.

72.    Apple's infringements have been willful, intentional, and deliberate.  Apple knew or should have known at least by the date that it received notice of this lawsuit that the Accused Devices would directly infringe one or more claims of the '559 Patent, and that its actions result in direct and indirect infringement of the claims of the '559 Patent.  Apple, however, has infringed and, on information and belief, continues to infringe claims of the '559 Patent.

73.    Apple has induced and continues to actively induce under 35 U.S.C. § 271(b). Its end-users and app developers to directly infringe one or more claims of the '559 Patent through affirmative acts.  The users and app developers of the Accused Devices directly infringe at least claim 1 of the '878 Patent when they use the Accused Devices in the ordinary, customary, and intended way.  Apple intentionally directs and encourages these users and app developers to use the Accused Devices within the United States in an infringing manner. Apple induces this infringement through affirmative acts.  These affirmative acts include, for example, making available advertisements, manuals, videos, and other marketing materials that promote and encourage the use of the Liquid Glass features that directly infringe one or more claims of the '559 Patent.  For example, Apple makes available through its website the video "Meet Liquid Glass" that encourages developers to incorporate Liquid Glass features into their apps.  *See* www.developer.apple.com/wwdc25 (last visited January 6, 2026).  In addition, Apple provides a Technology Overview for Liquid Glass for iOS app developers.    *See*

www.developer.apple.com/documentation/technologyoverviews/adopting-liquid-glass    (last visited January 6, 2026).  This web page specifically includes a section labeled "Controls" that provides information to developers on how and when to include Liquid Glass sliders.  Apple also provides advertising to end users regarding iOS 26, under the heading "New look. Even more magic."  *See* www.apple.com/os/ios (last visited January 6, 2026).  This webpage includes listings for Liquid Glass, including the features that allegedly infringe one or more claims of the '559 Patent.  Apple also highlights Liquid Glass on its webpage devoted to iPadOS.  *See* www.apple.com/os/ipados (last visited January 7, 2026).  On information and belief, Apple knew or should have known its actions induced others to commit acts that infringe at least claim 1 of the '559 Patent.  On information and belief, Apple will continue to induce its end users and app developers to use the Accused Devices in a manner that infringes the claims of the '559 Patent with knowledge that the Liquid Glass features are especially designed or adapted to operate in a manner that infringes.

74.    Apple also contributorily infringes under 35 U.S.C. § 271(c) one or more claims of the '559 Patent.  Apple knew or should have known at least by the filing of the Complaint that the combination for which its components were especially made was both patented and infringing.  Apple knew or should have known at least by the filing of the Complaint that the accused capabilities of Liquid Glass features as implemented on the Accused Devices would infringe one or more claims of the '559 Patent.  On information and belief, the accused capabilities of Liquid Glass features have no substantial non-infringing uses, and the specific and intended use of the accused functions of Liquid Glass features are a material part of the inventions of the '559 Patent.  These inventions do not constitute a staple article of commerce suitable for substantial non-infringing use.

27

75.    Peer has suffered damages as a result of Apple's direct and indirect infringement of the '559 Patent in an amount to be proven at trial.

76.    Peer has suffered, and will continue to suffer, irreparable harm as a result of Apple's infringement of the claims of the '559 Patent, for which there is no adequate remedy at law, unless Apple's infringement is enjoined by this Court.

## JURY DEMAND

77.    Pursuant to Federal Rule of Civil Procedure 38(b), Peer hereby demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Peer respectfully prays for:

A.    Judgment that Apple has infringed the '878 Patent by making, using, offering to sell, selling, and/or importing the Accused Devices in the United States;

B.    Judgment that Apple has induced infringement of the '878 Patent as of the date that it first gained knowledge of the claims of the '878 Patent;

C.    Judgment that Apple has contributorily infringed one or more claims of the '878 Patent as of the date that it first gained knowledge of the claims of the '878 Patent;

D.    Judgment that Apple has willfully infringed the '878 Patent as of the date that it first gained knowledge of the claims of the '878 Patent;

E.    A permanent injunction enjoining Apple and its affiliates, officers, agents, employees, attorneys, and all other persons acting in concert with Apple from infringing, either directly, contributorily, and/or by inducement, the '878 Patent;

F.      An award of damages adequate to compensate Peer for Apple' infringements, both direct and indirect, of the '878 Patent, together with prejudgment and post-judgment interest and costs;

G.      Judgment that Apple has infringed the '712 Patent by making, using, offering to sell, selling, and/or importing the Accused Devices in the United States;

H.      Judgment that Apple has induced infringement of the '712 Patent as of the date that it first gained knowledge of the claims of the '712 Patent;

I.      Judgment that Apple has contributorily infringed one or more claims of the '712 Patent as of the date that it first gained knowledge of the claims of the '712 Patent;

J.      Judgment that Apple has willfully infringed the '712 Patent as of the date that it first gained knowledge of the claims of the '712 Patent;

K.      A permanent injunction enjoining Apple and its affiliates, officers, agents, employees, attorneys, and all other persons acting in concert with Apple from infringing, either directly, contributorily, and/or by inducement, the '712 Patent;

L.      An award of damages adequate to compensate Peer for Apple' infringements, both direct and indirect, of the '712 Patent, together with prejudgment and post-judgment interest and costs;

M.      Judgment that Apple has infringed the '559 Patent by making, using, offering to sell, selling, and/or importing the Accused Devices in the United States;

N.      Judgment that Apple has induced infringement of the '559 Patent as of the date that it first gained knowledge of the claims of the '559 Patent;

O.      Judgment that Apple has contributorily infringed one or more claims of the '559 Patent as of the date that it first gained knowledge of the claims of the '559 Patent;

29

P. Judgment that Apple has willfully infringed the '559 Patent as of the date that it first gained knowledge of the claims of the '559 Patent;

Q. A permanent injunction enjoining Apple and its affiliates, officers, agents, employees, attorneys, and all other persons acting in concert with Apple from infringing, either directly, contributorily, and/or by inducement, the '559 Patent;

R. An award of damages adequate to compensate Peer for Apple' infringements, both direct and indirect, of the '559 Patent, together with prejudgment and post-judgment interest and costs;

S. An award of enhanced damages pursuant to 35 U.S.C. § 284;

T. A declaration that this case is exceptional under 35 U.S.C. § 285, and that Peer be awarded reasonable attorneys' fees and costs; and

U. Such other and further relief as this Court deems just and proper.


DATE: January 29, 2026

<div style="margin-left:50%">

*/s/ Jeff E. Danley w/ permission*
*William E. Davis, III*
William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com
Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com
**DAVIS FIRM, PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

</div>

Jeffrey E. Danley (*pro hac vice forthcoming*)
Syed M. Abedi (*pro hac vice forthcoming*)
SEED INTELLECTUAL PROPERTY
LAW GROUP LLP
701 Fifth Avenue, Suite 5400
Seattle, WA 98104
Tel: 206-622-4900
Jeff.Danley@seedip.com
SyedA@seedip.com

*Attorneys for Plaintiff Peer Global Inc.*